IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DR. MY HANG HUYNH,

      Plaintiff,

v.                                                                    No. CIV 10-276 JCH/RHS

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's *Motion to Partially Dismiss Plaintiff's Complaint* (Doc. 9). In this action for denial of benefits, Plaintiff Dr. My Hang Huynh ("Plaintiff") claims that Defendant Liberty Life Assurance Company of Boston ("Defendant") improperly denied her long-term disability benefits she was owed under the terms of two disability plans administered and insured by the Defendant and protected by the Employee Retirement Income Security Act of 1974 ("ERISA"). On the instant motion, Defendant claims that Plaintiff is precluded from bringing a claim under 29 U.S.C. § 1132(a)(3) for "other appropriate equitable relief" while also pressing a claim for recovery of benefits under another subsection of the ERISA statute, 29 U.S.C. § 1132(a)(1)(B). Plaintiff responds that the law of this Circuit permits a plaintiff to pursue claims under both subsections of the statute, and further, that arguments previously raised by Defendant in this action suggest that Defendant also intends to challenge her eligibility to recover benefits under 29 U.S.C. § 1132(a)(1)(B), which would leave her without adequate redress if Defendant's motion is granted. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that

Defendants' motion should be granted.

## FACTUAL BACKGROUND

*Origin of Plaintiff's Alleged Disability*

Plaintiff is a chemist formerly employed by Los Alamos National Laboratory ("LANL"), which is operated by Los Alamos National Security, LLC ("LANS"). She alleges that she developed a breakthrough method of making high-energy, environmentally sound explosives during her tenure at LANL, only to have certain male colleagues take credit for her innovations and establish patents for themselves on her work. Plaintiff claims that she was subsequently reassigned to other projects within LANL, until her male colleagues were unable to duplicate her results and threatened and harassed her in an attempt to make her return to the project. It is unclear from the Complaint when Plaintiff's difficulties with her colleagues began and whether Plaintiff returned to her original project.

As a result of her problems at work, Plaintiff alleges that by July of 2006 she "began to suffer from extreme anxiety and corresponding physical pain, spasm and limited mobility." (Doc. 1 Ex. 1, Cplt ¶ 15). By January 2007, Plaintiff was unable to function in any job and began an extended leave from LANL.

*The Disability Plans at Issue*

Defendant provides group disability insurance coverage to LANS employees (the "Liberty Disability Plan") and additional disability insurance coverage to a certain subset of employees through the LANS Defined Benefit Pension Plan (the "DB Disability Plan"). Under the Liberty Disability Plan, a member is entitled to short-term benefits if she "is unable to perform the material and substantive duties of his or *her own* occupation as a result of injury or

sickness," (Doc. 1 Ex. 1, Cplt.¶ 19), and entitled to long-term benefits if she "is unable to perform the material and substantive duties of *any* occupation as a result of injury or sickness." *Id.* ¶¶ 30, 32 (emphasis added). The Liberty Disability Plan contains a mental illness limitation that limits a claimant's ability to receive benefits for a disability arising from mental illness to a combined period of 24 months.

The DB Disability Plan provides eligible employees with long-term benefits for both physical and mental disabilities, and extends the benefits allowed for the latter under the Liberty Disability Plan by providing benefits to the mentally disabled plan member until she reaches retirement eligibility – well beyond the 24 months permitted under the Liberty Disability Plan. Under the DB Disability Plan, a member is deemed disabled if she has a disability that prevents her "from engaging in any occupation that prevents the participant from earning above the level of 'substantial gainful activity' as defined by the SSA [Social Security Administration]." *Id.* ¶ 36. The "SSA defines 'substantial gainful activity' as work that involves the performance of significant physical or mental duties for pay or profit." *Id.* ¶ 37.

Defendant is both the plan administrator and the insurer for both plans, and both plans are protected by ERISA. *See* 29 U.S.C.§ 1002(1) and (3). Plaintiff alleges that she was a participant in both plans at all times material to this action.

***Plaintiff's Successful Short-Term Disability Claim and the Social Security Administration's Disability Determination***

In February 2007, shortly after taking leave from LANL, Plaintiff submitted a claim to Defendant for disability benefits under the Liberty Disability Plan. Defendant accepted Plaintiff's claim and deemed Plaintiff entitled to short-term disability benefits for a period of one year, beginning in August 2007 and continuing until August 8, 2008.

Plaintiff alleges that her functional impairment worsened and her anxiety and depression continued unabated during the year she received short-term disability benefits. At some point in 2008, she applied for disability benefits from the SSA, pursuant to which she was evaluated by an independent psychologist, Dr. Robert Krueger, in July 2008, to determine her eligibility for SSA insurance. Dr. Kreuger diagnosed Plaintiff as suffering from a major depressive disorder, single episode severe with psychotic features; post-traumatic stress disorder ("PTSD"), moderate to severe; and panic disorder, with agoraphobia severe. On the strength of Dr. Kreuger's findings, in August 2008, the SSA determined that Plaintiff was disabled as of February 2007 and granted her social security benefits accordingly.

*Plaintiff's Claim for Long-Term Disability Benefits and Supporting Medical Record*

On a date not set forth in the Complaint, Plaintiff applied to obtain long-term benefits from Defendant upon the exhaustion of her short-term benefits in August 2008. Pursuant to her claim, Plaintiff supplied Defendant with the reports of eight different medical professionals (one LANL physician, one LANL psychologist, one treating physician, two treating psychiatrists, one physician's assistant, and two independent medical examiners to whom Plaintiff was referred by Defendant -- one a psychiatrist and the other a psychologist[1]) all concluding that Plaintiff was disabled and unable to maintain any employment.

During the period that her claim was pending, Plaintiff alleges that she was placed under video surveillance by Defendant "on numerous occasions" in an attempt to contradict the

---

[1] Elsewhere in the Complaint, Plaintiff indicates that she was also examined by a neurologist/independent medical examiner, Dr. Baten, to whom she was referred by Defendant, who also concluded that she was unable to work. It is unclear when the examination occurred, or whether Dr. Baten should be counted as a ninth medical professional supporting Plaintiff's disability claim.

findings of the various medical experts supporting her claim to disability.  (Doc. 1 Ex. 1, Cplt.¶ 46).  Defendant denies the allegation.

*Dr. Lipian's Finding of Non-Disability*

In June 2008, after undergoing three separate independent medical examinations resulting in findings of disability,[2] Plaintiff alleges that Defendant required her to undergo a fourth and final examination by another independent medical examiner, Dr. Mark Lipian.  Dr. Lipian also served as a paid consultant for Defendant.  On July 24, 2008, Dr. Lipian submitted a report to Defendant relaying his conclusion that Plaintiff was not mentally disabled.  Plaintiff alleges that Dr. Lipian's report: improperly relied on an adversarial response brief submitted by LANL in Plaintiff's discrimination action against members of her former work group; drew on unsubstantiated statements by LANL employees and Plaintiff's ex-husband; quoted a 2006 report LANL report exonerating Plaintiff's former colleagues of misconduct towards her, but failed to mention that the report's findings were ultimately revisited and rejected; reflected a misreading of Plaintiff's other medical reports; and misrepresented surveillance footage of Plaintiff and Plaintiff's own responses to Dr. Lipian's questions regarding her symptoms.  As to the substance of Dr. Lipian's medical evaluation, the Complaint recites that he found that Plaintiff exhibited no anxiety, panic, or related symptoms during a two-day span of interviews and that he expressed disbelief as to Plaintiff's self-report with respect to her symptoms.

Plaintiff contends that of the five independent medical examiners who evaluated her (including the independent medical examiner to whom she was referred by the SSA), only Dr. Lipian concluded that she was not disabled.  She further alleges that Dr. Lipian, acting as

---

[2]*See supra* n.1.

Defendant's agent, reached out to several of Plaintiff's healthcare providers, "attempting to persuade them that Plaintiff was dishonest and faking her disability." *Id*. ¶ 79.  One of Plaintiff's treating physicians, psychologist Dr. Deepa Nadiga, allegedly terminated his doctor-patient relationship with her on account of Dr. Lipian's contact.

*Defendant's Denial of Plaintiff's Petition for Long-Term Benefits and Plaintiff's Appeal*

On August 15, 2008, Defendant notified Plaintiff that her claim for long-term benefits under the Liberty Disability Plan was denied.  On September 5, 2008, Defendant denied Plaintiff's claim for long-term benefits under the DB Disability Plan.

On February 12, 2009, Plaintiff appealed Defendant's termination of her benefits under the Liberty Disability Plan and appealed under the DB Disability Plan by duplicate letter one week later, on February 19, 2009.  On June 30, 2009, Defendant sent Plaintiff a letter upholding its denial of her claim.

**PROCEDURAL HISTORY**

On February 5, 2010, Plaintiff filed a Complaint in the First Judicial District for the State of New Mexico, County of Los Alamos, for recovery of disability benefits under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).  (Doc. 1).  Defendant removed the action to the U.S. District Court for the District of New Mexico on March 25, 2010.  *Id.*  The matter was initially assigned to U.S. Magistrate Don J. Svet (Doc. 4), and subsequently reassigned to Senior District Judge James A. Parker (Doc. 13), and finally to the undersigned and U.S. Magistrate Judge Robert Hayes on April 8, 2010.  (Doc. 15, 4).

On April, 1, 2010, Defendant filed the instant motion seeking to dismiss one of Plaintiff's two asserted grounds for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

(Doc. 9), followed by its Answer and counterclaim on April 7, 2010 (Doc. 5). The motion was fully briefed as of April 28, 2010. (Doc. 19).

## LEGAL STANDARD

Rule 12(b)(6) provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993). A motion to dismiss should be granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, a court must assume all well pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.*,144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). However, the rules do not require a court to accept legal conclusions or unwarranted inferences. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

## DISCUSSION

Where an employee's disability benefits plan is covered by ERISA, the employee may

rely on ERISA's protections to recover wrongfully withheld benefits.  Plaintiff's cause of action asserts her entitlement to relief under two subsections of the governing statute, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), which provide in relevant part:

> A civil action may be brought –
>
> > (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .
> >
> > (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Defendant's argument that Plaintiff cannot state a claim for equitable relief simultaneously with her claim for denial of benefits relies on a line of ERISA cases extending back to *Varity Corp. v. Howe*, 516 U.S. 489 (1996).  In *Varity*, the claimants, who had worked for a floundering subsidiary of Varity and had transferred to another subsidiary on Varity's promise that their ERISA-protected benefits would not change, filed an action under ERISA when they subsequently lost their plan membership and, consequently, their benefits. Among other relief, the claimants sought "appropriate equitable relief" in the form of an order that would reinstate them as participants in their original benefits plan. *Id.* at 492.  In affirming the holding that the claimants were, in fact, entitled to relief under § 1132(a)(3), the Court reasoned that it was the only appropriate provision under which the claimants could obtain the benefit of plan membership: "The plaintiffs in this case could not proceed under the first subsection because they were no longer members of the [] plan and, therefore, had no 'benefits due [them] under the terms of [the] plan' . . . They could not proceed under the second subsection because that provision . . . does not provide a remedy for individual beneficiaries. . . . They must rely on

the third subsection or they have no remedy at all." *Id.* at 515.  Concluding that equitable relief was thus "appropriate" as the only avenue available to the claimants, the Court reflected that it "should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.*

    Here, by way of contrast, Defendant contends that there is "no need" for Plaintiff to seek additional equitable relief and that she is in fact precluded from doing so.  The critical difference is that Plaintiff was a member of both of the plans at issue at the time she submitted her disability claim, thereby ensuring that she will be able to recover ERISA-protected benefits under § 1132(a)(1)(B) if she prevails at trial.  Because additional equitable relief "normally would not be 'appropriate'" in Plaintiff's situation, Defendant relies on *Varity* for the conclusion that she may not press a breach of fiduciary duty claim under § 1132(a)(3) based on the same facts as her "denial of benefits" claim under § 1132(a)(1)(B).  In support of its reading of *Varity*, Defendant points to *Moore v. Berg Enterprises, Inc.,* 1999 U.S. App. LEXIS 30481, at *5 n.2, 201 F.3d 448 (10th Cir., Nov. 23, 1999), in which the Tenth Circuit found that a plaintiff employee could not assert a § 1132(a)(3) claim concurrently with his § 1132(a)(1)(B) claim: "*Varity* . . . held that [§ 1132(a)(3)] does authorize appropriate equitable relief to participants or beneficiaries to redress ERISA violations, but only if no other adequate ERISA remedy is available.  Section 1132(a)(1)(B) expressly provides for the recovery of benefits and thus, provides adequate relief."  Thus, the Tenth Circuit concluded, the plaintiff was "not entitled to 'repackage his . . . . 'denial of benefits' claim as a claim for 'breach of fiduciary duty,' and seek relief under Section 1132(a)(3)." *Id.*, quoting *Varity*, 516 U.S. at 513.  *See also Swearingen v. Honeywell, Inc.*, 189 F. Supp.2d 1189, 1197 (D. Kan. 2002) ("a participant or beneficiary will

9

not be permitted to seek equitable relief under § 1132(a)(3) if he or she has another adequate ERISA remedy available to him or her") (granting defendant insurer's motion to dismiss § 1132(a)(3) count for equitable relief where § 1132(a)(1)(B) would provide her with adequate remedy); *Lefler v. United HealthCare of Utah*, Inc., 162 F. Supp.2d 1310, 1325 (D. Utah 2001) ("In the wake of *Varity*, federal courts have concluded that, when a plaintiff can *state* a claim for relief under 29 U.S.C. § 1132(a)(1)(B), the plaintiff cannot maintain simultaneously a claim under 29 U.S.C. § 1132(a)(3)") (further citations omitted)..

The Court agrees that the Tenth Circuit is unequivocal that Plaintiff may not seek equitable relief under § 1132(a)(3) where she has a remedy under § 1132(a)(1)(B) available to her. Plaintiff, too, appears to mostly accept this position.[3] She argues, however, that because Defendant "appears to challenge" her allegation that she was a member of the plans at issue "during the relevant time periods," the Court should not presume that she necessarily has an adequate non-equitable remedy available. (Doc. 17 at 2). The challenge to which Plaintiff refers is the phrase repeated at various places in Defendant's Answer acknowledging that "Plaintiff was, at certain times, a participant" in the Liberty Disability Plan, (Doc. 14, Answer ¶¶ 1, 10, 11, 13, 14) (emphasis added), which appears in response to Plaintiff's assertion in the Complaint that "[a]t all times material to this action LANS, through Liberty, provided [ ] insurance

---

[3]Plaintiff does, however, attempt to soften the impact of *Moore* by pointing to *Holcomb v. UNUM Life Ins. Co. of America,* 578 F.3d 1187 (2009), in which the Tenth Circuit did not specifically take issue with the fact that a plaintiff employee brought both § 1132(a)(1) and (a)(3) claims in the same suit. *Id.* at 1193. Because the defendant insurance company did not place the issue of whether the claims could be combined directly before the Tenth Circuit, and moreover, because the court did not need to consider the parameters of an appropriate remedy after affirming the lower court's dismissal of the entire action, the Court finds that it would be disingenuous to attempt to read into *Holcomb* a reconsideration of the Tenth Circuit's clearly-stated position in *Moore.*

coverage" to Plaintiff via the plans at issue. (*See* Doc. 1 Ex. 1, Cplt. ¶¶ 10-11) (emphasis added). In response, Defendant maintains that it employed the "at certain times" phrasing in light of Plaintiff's own "ambiguous pleading" claiming that she was a plan member at all relevant times but not defining the relevant time period.  Regardless, Defendant clarifies its admission that Plaintiff was a participant in the plans at issue "as of her last day of work at [LANL] on February 28, 2007, and the last day of work is the relevant date for determining eligibility as a participant."  (Doc. 19 at 2).  Because there is no dispute as to Plaintiff's ability to seek recovery for denial of disability benefits pursuant § 1132(a)(1)(B), the Court finds that Plaintiff is precluded from simultaneously pressing a claim for equitable relief under § 1132(a)(3) under *Varity* and *Moore*.

## CONCLUSION

For the foregoing reasons, it is therefore ordered that Defendant's *Motion to Partially Dismiss Plaintiff's Complaint* (Doc. 9) is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**

11